**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 23-204** |
| **REGINALD ADAMS,** | : | |
|    a/k/a "REGGIE ADAMS" | | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

**I.     INTRODUCTION**

From May 2020 to August 2021, defendant Reginald Davis wreaked havoc on the lives
of at least 20 young female victims. Targeting mostly women he knew from high school, he
hacked into these victims' social media accounts, stole their private sexually explicit
photographs and shared them with the victims' contacts – to their friends, family, coworkers and
acquaintances.   Sometimes, he posted the victims' private photos on public websites along with
the victims' contact information, which led to victims receiving unsolicited messages from
unknown individuals who had seen their photos and wanted more. He also extorted women,
tricking them into sending him photos by falsely promising to pay them, then using their photos
to control the women and extract more photos. The defendant's conduct was more than just a
series of pranks.   It was a vicious violation of their privacy that caused not only emotional
trauma, but damage to the victims' personal relationships, professional reputations and self-
image.   For all of this, he deserves a sentence significantly above the calculated guidelines
range.

**II.     BACKGROUND**

On August 9, 2022, the defendant was charged by complaint in the Eastern District of
Pennsylvania with wire fraud, in violation of 18 U.S.C. § 1343.   On May 9, 2023, the defendant

was indicted on the same charge.   On January 30, 2024, he entered a guilty plea to this charge, pursuant to a written plea agreement, and now awaits sentencing by this Court.

### III.   LEGAL STANDARD

The Third Circuit requires district courts to engage in a "three-step process for incorporating adequate consideration of the Guidelines into their sentencing procedures." United States v. Lofink, 564 F.3d 232, 238 (3d Cir. 2009).   First, district courts "must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.   Id. Second, district courts must "formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account [the Third Circuit's] pre-Booker case law, which continues to have advisory force."   Id. at 237-38.   Third, district courts must "exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless of whether it varies from the sentence calculated under the Guidelines."   Id. at 238.

### IV.   SENTENCING CALCULATION

#### A.   Statutory Maximum Sentence

The maximum penalty for a violation of 18 U.S.C. § 1343, wire fraud, is 20 years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

#### B.   Sentencing Guidelines Calculation

The government agrees with the probation office regarding the guideline calculation as follows:   the defendant's base offense level is 7 under U.S.S.G. § 2B1.1(a)(1) (PSR ¶ 36); a 2-point enhancement under § 2B1.1(b)(2)(i) applies because the offense involved ten or more victims (PSR ¶ 37); a 3-point enhancement under § 2B1.1(b)(10)(C) applies based on the defendant's sophisticated means used to conduct the offense (PSR ¶ 38); a 2-point enhancement

applies under § 2B1.1(b)(18)(B) because the offense involved the unauthorized public dissemination of personal information (PSR ¶ 39); a 2-point reduction under § 4C1.1(a) and (b) applies based on the defendant meeting the criteria for a Zero-Point Offender (PSR ¶ 44); and a 2-point reduction applies pursuant to U.S.S.G. § 3E1.1(a) and (b) based on the defendant's acceptance of responsibility (PSR ¶ 45).   The total offense level is 14.   With a criminal history category of I, the defendant's guideline range is 6-12 months.   *Id.* ¶ 97.

Despite defendant's objection, the government agrees with the probation office that the two-point enhancement for sophisticated means is warranted in this case.    This enhancement applies where "the conduct shows a greater level of planning or concealment than a typical fraud of its kind." United States v. Fumo, 655 F.3d 288, 315 (3d Cir. 2011). In determining whether a fraud scheme involved sophisticated means, the Court may consider "factors like the duration of a scheme, the number of participants, the use of multiple accounts, and the efforts to avoid detection." United States v. Fountain, 792 F.3d 310, 319 (3d Cir. 2015); see also United States v. Lopapa, 537 F. App'x 108, 111 (3d Cir. 2013) ("[W]e have found the sophisticated means enhancement appropriate in cases where the fraud 'involved the use of a shell corporation [and] falsified documents.' … Our sister circuits have similarly found the enhancement appropriate when the fraudster has taken extensive actions to conceal the scheme, … , or when the fraudster has engaged in the repeated use of fictitious identities and other deceptive practices, … ."). This is consistent with Application Note 9 to USSG § 2B1.1(b)(10)(C), which explains that the sophisticated means enhancement is applicable where the fraud involved "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense … Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means."

Here, the defendant's scheme entailed a series of complicated steps and numerous fake phone numbers, false identities and online monikers.   He sent fraudulent texts to 131 victims pretending to be Snapchat staff, and then sent multiple follow-up texts – in one case, he sent a victim 39 additional messages.   Sometimes, to exact additional pressure, he sent texts to victims as himself, pretending to be their friend and encouraging them to cooperate with Snapchat and disclose their security codes.   After he obtained a victim's security code, he accessed her account, found private nude photos as well as personal identifying information, and took screenshots. FBI identified at least 20 victims whose photos and information was saved in Adams phone and/or online accounts.   He then took over the victims' accounts and sent their private photos to the victims' contacts.   To conceal his identity, Adams used 13 different phone numbers, created 7 new personas/online monikers and had multiple accounts for each on various online platforms including Reddit, Kik, Snapchat, and Doublelist.   He used those monikers/accounts to post screenshots of victims and their personal information on public websites, to trade nude photos with other online users, to send photos to others, including friends of victims, to send messages to victims alerting them that their nude photos were publicly posted, and sometimes to send victims repetitive messages revealing their own personal information, thereby putting them in a state of fear.   In sum, this was a sophisticated scheme that involved many steps to execute and considerable efforts to conceal the defendant's identity. For these reasons, the sophisticated means enhancement properly applies.

## V.    18 U.S.C. § 3553(a) FACTORS

In addition to the guideline analysis above, this Court must also consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a).   Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for

the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.   18 U.S.C. § 3553(a).   As described more fully below, a thorough consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a) establishes that a sentence above the guideline range is appropriate in this case.

A.   **The Nature and Circumstances of the Offense and the History and Characteristics of Defendant**

As explained above, this was a sophisticated offense that targeted dozens of victims and stretched over 15 months.   The fact that the defendant may not have appreciated the seriousness of his offense has no bearing on the reality that this was in fact a serious offense.   Indeed, the victims' impact statements reveal just how shaken they were by the defendant's criminal conduct.   Some of them are still struggling to recover from the anxiety and emotional trauma he caused.   While the wire fraud statute was appropriate based on venue limitations, the guidelines for that statute are driven by economic loss.   Since there was no economic loss in this case, the end result is a meager guideline range of 6-12 months.   The government agrees with the probation office that this calculation does not adequately capture the extent of the victimization perpetrated by the defendant in this case.[1]   PSR ¶ 111.   Based on the substantial harm he caused

---

1 For example, setting aside venue, had the defendant been convicted of cyberstalking five victims, his guideline range would be 33-41 months. Similarly, if he had been convicted of aggravated identity theft, he would be facing a mandatory 24 months on top of the 6-12 months.   While the government did not pursue those charges, the

5

many victims, a variance above the guidelines is warranted.

Turning to the defendant's history and characteristics, the PSR provides that he has no criminal history points.   PSR ¶ 49.   However, it is worth noting that the defendant was not well-behaved during the investigation or pretrial release.   After being caught and confessing to the FBI in November 2021, Adams still did not appreciate the gravity of his conduct, as he continued to contact victims online using his various pseudonyms and online monikers.   In some instances, he sent the victims unsolicited messages containing photos of other nude females and/or images of male genitalia.   In August of 2022, Adams was arrested and put on pretrial release, but even this did not cause the defendant to curb his behavior.   While on pretrial release, his supervising pretrial officer learned that Adams was having numerous exchanges over social media with nude females as well as viewing an extensive amount of pornography.   PSR ¶ 9.   Despite admonitions from the officer, Adams continued this behavior over the ensuing months, which led to the modification of the defendant's conditions – specifically, the defendant was prohibited from possessing computers/internet connected devices and ordered to attend mental health treatment.   PSR ¶ 11.   Even after this, the defendant persisted in his noncompliance, as he continued to access the internet to visit websites containing pornography and sexually explicit materials, including fiction literature of sexual encounters involving school-aged girls.   PSR ¶ 13.   A violation hearing was held in June 2023, and the defendant was ordered to use only a "safe phone" without internet access, and again to attend mental health treatment.   As of his change of plea hearing in January 2024, the defendant had still not enrolled in a mental health treatment program.   The PSR reports that Adams scheduled an initial appointment for late May

---

defendant's conduct encompassed those offenses.   In light of these circumstances, an upward variance is appropriate.

2024, although it is currently unknown whether he attended that appointment.[2]

Given the seriousness of the defendant's crime, including the number of victims who were harmed and the extent of that harm, along with the defendant's history of incorrigible behavior, a substantial sentence well above the guidelines is appropriate and necessary in this case.

**B.**  **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

As explained above, the defendant's offense caused significant harm to at least 20 victims and went on for more than a year. Yet, when speaking with the FBI in November 2021, Adams stated that he engaged in this conduct because he was "bored and horny."   This nonchalant explanation conveys his total and utter disregard for the victims and their privacy.   Moreover, even after he was caught, he persisted in this unhealthy behavior, eventually violating the conditions of his release.   This history show that he lacks respect for the law.   A significant sentence of incarceration will reflect the seriousness of the defendant's offense, justly punish him for his conduct and promote respect for the law.

**C.**  **The Need To Afford Adequate Deterrence To Criminal Conduct, and To Protect the Public from Further Crimes of the Defendant**

Given the defendant's conduct in this case, his lack of compliance with pretrial conditions of release and his failure to grasp the seriousness of his offense, the government submits that there is substantial need for specific deterrence in this case.   The defendant must understand that his conduct has consequences.   Moreover, there is also a real need for general deterrence, given how ubiquitous online misbehavior is and how many young women are

---

2 The PSR details the defendant's mental health struggles that predate this offense. Clearly, the defendant has a significant need for mental health treatment, but that does not exculpate him from his crimes or the harm he caused his victims.

7

victimized in similar fashion.   A sentence above the guidelines is needed to send a message to would-be offenders that this type of criminal behavior will yield serious punishment.

      **D.**      **The Need To Provide the Defendant With Care in the Most Effective Manner**

The statute provides that sentences should be adjusted in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."   18 U.S.C. § 3553(a)(2)(D).   The Bureau of Prisons is well equipped to provide the defendant with mental health treatment on a regular basis, something he sorely needs.

      **E.**      **The Guidelines and Policy Statements Issued by the Sentencing Commission, the Need to Avoid Unwarranted Sentencing Disparity**

A sentence within the guideline range is typically the best way to avoid unwarranted sentencing disparities among defendants found guilty of similar conduct.   However, in this case, the defendant was convicted of an offense that did not fully cover his criminal conduct, due to venue restrictions.   Accordingly, the government is seeking an upward variance.

      **F.**      **The Need to Provide Restitution to Victims of the Offense**

Although the defendant caused significant emotional damage to the victims, there is no monetary restitution being sought in this case.

VI.     <u>**CONCLUSION**</u>

For all the reasons set forth above, the government submits that defendant Reginald

Adams should be sentenced to a term of imprisonment significantly above the guideline range.

The maximum period of supervised release (three years) should also be imposed.


Respectfully submitted,

JACQUELINE C. ROMERO
UNITED STATES ATTORNEY

<u>/s/ Sarah M. Wolfe</u>
SARAH M. WOLFE
Assistant United States Attorney
Eastern District of Pennsylvania

DATED:   July 30, 2024

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing has been filed electronically and is available for

viewing and downloading from the ECF system, and a true and correct copy of the foregoing

were served upon counsel for the defendant by email:

> Catherine Henry, Esq.
> Catherine_Henry@fd.org
> Katrina Young
> Katrina_Young@fd.org

Date:   July 30, 2024

> /s/ Sarah M. Wolfe
> SARAH M. WOLFE
> Assistant United States Attorney